We will hear counsel in United States v. Cheeseman. We will hear counsel in United States v. Cheeseman. Ms. Williams, I bet. Good morning, Your Honors, and may it please the Court. Chandra Williams on behalf of the appellant, James L. Cheeseman. I'm here with my co-counsel, Mr. Charles Oberle. I'd like to reserve two minutes for rebuttal, please. Sure. Thank you. Your Honors, my client, Mr. Cheeseman, was a sole proprietor since 1994. He began and ran... Walk a little more clearly into the mic so we can... Is that better, Your Honor? Yeah. Okay. You're loud enough. It's just a distinction. Go ahead. Okay. He was a sole proprietor since 1994. He began and ran X-Ring Supply, which is a sporting goods store that specialized in firearms. He built up that store. He held a federal firearms license in conjunction with his running of X-Ring Supply. Unfortunately, Mr. Cheeseman began to use cocaine and slowly became an addict of cocaine at the age of around 50. During that time, Mr. Cheeseman began to separate himself from the business of X-Ring Supply. And, in fact, his sister, Nancy McNatt, and others at the store began to run the day-to-day operations. The only issue before us is the forfeiture, right? Correct, Your Honor. Okay. Why does he have Article III standing to challenge the forfeiture as an excessive fine when he has nothing at stake because he sold the firearms and the business to his sisters? Yes. Why is he here? Why does he have the right to be here? Well, Your Honor, he has an interest in the firearms and the fact that it was part of his sentence, number one. And number two... Yeah, but that's behind. He sold them. I mean, he sold the business, including the firearms, to his sister, right? Correct. Or sisters, right? Correct. So what's his standing now? Well, Your Honor, we were unable to move forward with Ms. McNatt and X-Ring Supply since the business was, in fact, sold. It was sold after his arrest and before his sentencing. At this point, he's... You're just telling me facts. You're not telling me reasons. You're not answering. He's the only person at this point that technically would have the right to move forward with request of the forfeiture. Why is that, though? I mean, this is a criminal forfeiture, correct? Correct. I may be off base, but in my experience with civil forfeiture, a party, let's say, call them an innocent owner, for lack of a better phrase, had a right in the civil forfeiture arena to file what's called a claim of interest, saying, look, government's trying to grab this property, but it really belongs to me, not to the malfeasance. Yes. Is that not allowed in the criminal forfeiture realm? Well, with respect, a petition for mitigation was filed with the ATF, and it was denied, indicating that Ms. McNatt and X-Ring Supply... She's the so-called innocent owner, what have you. She filed one of those petitions? Correct. And because it's not in the civil realm, it's in the criminal realm, this was the only posture that we could bring it before the court. She doesn't have a right to file that in court? In the civil forfeiture arena, you file your claim of interest with the court, and then the judge makes the determination. Was that not available to her? It was not, Your Honor. And because it's in the criminal posture, it goes into the sentencing with respect to Mr. Cheeseman, and that's why we're here today. So her only recourse was to the ATF? Correct. If you prevail, the guns would go to the sister? The guns would go to X-Ring Supply, which is owned by both sisters, both Nancy McNatt and Pamela Rhodes, correct. And Ms. McNatt testified at the forfeiture hearing and indicated that those guns would then be placed in X-Ring Supply's possession and sold according to the ATF laws. X-Ring Supply currently has a valid federal firearms license. But going back to Judge Slover's question, you say this is the only way you could do this, but the question is still outstanding. Can you do it? Well, our argument would be that this was part of his sentence and it's considered a punishment. Yeah, but he sold it. He did sell it. I mean, if you have no longer any interest in the property, the guns, then why can you say, I want them back? They're not mine anymore. And that's probably a nuance in this case that is very difficult to overcome. I'm glad about that, but I still don't know the answer to that. Well, the fact of the matter is it is part of his punishment. But it's over. I mean, he doesn't have – am I right? He doesn't have any interest in the guns? Well, pursuant to the contract that was signed between the two parties, being Mr. Cheeseman's – It's a yes or no answer. Does he have an – you can then explain, obviously. Does he have an interest in the guns? Yes. But he sold them. He did sell the guns. You are correct, Your Honor. His interest would be after they go back to X-Ring Supply, his sister may well decide to give him some of the proceeds of that money. Well, him. I'm sorry. Was he paid? He has been paid in full. That was pursuant to the ATF's requirement within the contract. And his personal collection was among those guns seized? They were, Your Honor. But he sold those also? The contract stated that any firearms that were seized by the government that were returned would go to X-Ring Supply, and that encompassed the personal firearms as well. But he has no legal claim to the guns. He has a contract in place, though, that says that those guns would go to X-Ring Supply. So our argument would be that he has the contract. So if he wins, the guns go back to X-Ring Supply. He may get paid for the guns. But he's been paid already for the guns. He has been paid in full by the contract. Correct. Okay. Correct. The main argument – So really what he has at risk is some sort of recoupment claim by his sister to get the money back. Correct. I mean, it's fair to say, in fact, it is his sister. There's family involvement here, of course. He does live with his sister as well at this point. So there may well be money that goes back to him if the guns are sold by X-Ring Supply. I think importantly, obviously, he's a convicted felon at this point. The firearms cannot be returned to him. So he has no interest in them. I mean, he doesn't own them anymore. He has sold them. All right. Let's pass that. Why were the firearms that he unlawfully possessed not, quote, involved in, quote, the offense of unlawful possession under Section 922G3? Well, unfortunately, the Supreme Court hasn't defined what involved in means. However, they have stated – Okay. That's why I asked you. Right. They have stated that you should use plain meaning of words within the statute. Involved in means to engage as a participant, to take part, to relate closely. That was not done here. The firearms were completely and wholly separated from Mr. Cheesman's addiction. Wait a minute. Doesn't involved in have to do with his possession as he admitted in the statute? In other words, the term involved in refers back to Section 922. Right. And Mr. Cheesman pled guilty to possessing firearms as an addict. He didn't plead guilty to using those firearms in any other form or fashion. No, no. We're talking about – Yeah, we're talking about possession, not use. Correct. I mean, it's used or possessed. So involved in would relate to involved in his possession as he admitted in Section 922. Isn't that the way we should look at it? Well, Your Honor, no. Involved in means something just slightly more. It's more than just mere possession. We want it to go back to use. Use means definitely more than possession, pursuant to what the courts have said in the three cases, Smith, Bailey, and Watson. Involved in also means more than just holding or possessing. There's some sort of activity or involvement. And in this particular case, the firearms were wholly separated from Mr. Cheesman's drug use. He did, in fact – Oh, let's see if that's really true. First of all, by selling the firearms, he just put his hand in the cash register and took out $1,000 to $10,000 a month. That money came from the sale of the firearms. It didn't come from anything else. So certainly that's how he was able to continue his drug possession and take on with these – there were two women, right? Weren't there two different women? Yes, Your Honor. Yeah. I'm not sure which one was before or after. And there was evidence that he smoked, if you smoked cocaine, and there were pipes left in the store, right? So why can you say that they were completely separate? Well, Your Honor, number one, when Mr. Cheesman was arrested, there were no firearms on his person. There were no firearms in his vehicle. When the case was handed over to the federal government and they went into X-Ring Supply, there's two separate buildings. The X-Ring Supply, that's the store where the firearms are kept and sold,  there were no firearms found in that warehouse where Mr. Cheesman stayed. Admittedly, there was drug paraphernalia, but there were no firearms found where Mr. Cheesman stayed. Do we really need proximity of the firearms to Mr. Cheesman under the statute? It seems to me it's just plain language. If I read to you what 924 provides, it says very clearly, any firearm involved in any knowing violation of subsection G of section 922. Correct. Involved in a knowing violation. Well, there is a knowing violation because he pled guilty to it. So isn't that all that the statute requires and what has to be shown? It is what the statute requires, Your Honor. Correct. And involving proximity and whether he was there or not, all that seems irrelevant in the words of the statute. Except that involved in means something more than just mere possession. It means he has to in some way employ that gun in the activities of his drug use. That's not plain language. I'm looking at what this statute says, and the statute says involved in a knowing violation of 922. Correct. You admit the knowing, the violation of 922, right? You can't unadmit that. He pled guilty to knowing possession of a bunch of guns. Absolutely. He pled guilty to possession. And now 924 kicks in and says, if you're involved in possession of a violation of subsection G, any guns involved in that statute may be forfeited. And it requires an extra step. He absolutely pled guilty to possession. He pled guilty to being a drug user. Knowing possession. Right. He pled guilty to knowingly possessing as a drug user. What's the extra step? The extra step is that those firearms that he possessed weren't knowingly used and involved in a knowing violation. The possession is the violation. I guess I've had trouble understanding your efforts, and maybe this is just the best you can do based on the state of the law. And the facts. And the facts, right. But I'm having trouble understanding how the line of cases where we're dealing with people who deal drugs and possess firearms in conjunction with and we're dealing with some sort of linkage between the two. This is really a status crime, right? Once you have the addiction, you're an addict, and you have the gun, that's the crime. That's it. That is the crime that he pled guilty to. So the gun is inextricably intertwined with the element of the offense, is it not? Except that he didn't use the guns in any form or fashion to get his drugs. He doesn't have to. All he has to do is be an addict who knowingly possesses the guns, right? In order to plead guilty to a section 922G3 crime, correct, but not in order to have the guns forfeited under 922D1. No, 924. I'm sorry. Thank you, Your Honor. 924D1. That requires more. That requires the firearms to be involved in. It says any firearm or ammunition involved in, leave out use, involved in any knowing violation of subsection G. We've already taken care of that part. There was a knowing violation of subsection G because he pled guilty. So what we've been questioning, Judge Hardiman's been pressing you, is why isn't that automatically forfeitable under the first part, which says any firearm or ammunition involved in. Now you say, well, involved in requires more. Correct. And I ask you, well, one, there were three crack pipes. Those are the things I passed on this story. Three crack pipes where the firearms were, and he's the only one, you have to admit, they were his crack pipes, right? No, Your Honor. That hasn't been established. Well, you never claimed that they were somebody else's crack pipes. And he was the only one that went in and out, and he was a drug addict. And he took money from the sale of the firearms. And why isn't that enough to show involvement? He took up to $10,000 a month, each month. Well, two pieces to that answer, and I see my time has expired. No, no. It's our time now. Thank you, Your Honor. Two answers to that, Your Honor. Number one, Charlotte Key was in and out of the store as well. And so that hasn't been established. That's his girlfriend? That was at the time, Your Honor, that those crack pipes were, in fact, his, and he wasn't in the store at the time they were found. And number two. Did you claim that they were in his crack pipes? Anywhere? I believe it was in the forfeiture transcript, Your Honor, but to tell you absolutely for sure, I can't, in all candor. All right. And what about the money? And the money hasn't been tied to any purchase of the drugs. Well, wait a minute. But the money came from the cash register that was in the store, which sold the guns. The money came from ATM withdrawals, Your Honor. Well, from the store that did nothing. I mean, they didn't sell butter and cheese, did they? They did not, Your Honor. You are correct. They sold guns. That was the business, and that was obviously the source of the money. Correct, Your Honor, in that he did have the ‑‑ So why isn't that an involvement? Because there's nothing in the record that connects the firearms to Mr. Cheeseman's drug use. But he took the money from the sale of the guns, and he was a drug addict. I don't understand what more connection you need. That has to be something that is related closely or affected or implicated, and that just simply hasn't been established here. You can't work an automatic forfeiture under 924. You always have to have something beyond possession. If Congress intended it to only be an automatic forfeiture, they would have removed the words use and involved in, and they chose to put those words in. Well, I don't know, because involved in refers back to the statute on which your client pled guilty. And, of course, Congress's purpose is to keep guns away from individuals who abuse drugs because they have a public purpose. So they crafted the statute to, I think, I could be wrong, work an automatic forfeiture. If you're a drug user and you plead guilty, you lose the guns. One thing I would just like to add, Your Honor, is the fact that these are You can tell me that's wrong. I should be happy to consider your thoughts. I do believe it's not automatic, but this is a complete unique circumstance that this is a legitimate company with a federal firearms license selling guns I think that might be right with regard to use. I think you have to consider the employment of the guns if we use the word use, but that's not what we're working with. That's right. Congress overdid when the Supreme Court made the decision with respect to use, which overturned some of my opinions in the past. Congress took care of that by saying involved in. But we'll get you on rebuttal. Let's hear what the government has to say. Thank you, Your Honor. Thank you. Did you have any more questions? Did you have any? Then let me cut you off. May it please the Court, Keith Rosen on behalf of the United States appellee in this matter. Okay, tell us first about the standing. Did you argue lack of standing? We did not argue lack of standing in this case, Your Honor. I'm surprised. We were very surprised. It's for two reasons principally. We took the position that because this was a criminal forfeiture and not a civil and rem forfeiture, it is by law part of the defendant's sentence, and therefore we thought it would be incongruous to argue that the defendant could not have standing to contest the particular part of his own sentence. This is not unique in gun cases, Your Honor, when you're dealing with a forfeiture, since even if we didn't have the contract in place, say that wasn't part of the case, alleviating the Court's question about standing, if the defendant had prevailed, it is not automatic that the guns would go back to him or anyone else. In fact, there's decisions from the 8th and 11th and other circuits, Felici case is the leading case from the 8th Circuit, that have held that even if a defendant establishes that the government improperly seized weapons from him, if he is adjudicated a prohibited person, the Court cannot order the guns to go back to the defendant. And the 11th Circuit has gone further and held the Court can't order the guns to go back to his designee either, because that would work a constructive possession by the defendant, which is prohibited by law. Those circuits have held that the only recourse is for the Court to order that the weapons be destroyed, whether or not they were appropriately seized or if they were. But that would be an entirely moot appeal then. We didn't. What is the fight about? We did not raise the Felici issue. It was not ripe yet before the District Court, since Judge Robinson ruled that the forfeiture was appropriate. And this circuit has not ruled on the Felici question yet. There's an unpublished decision, per curiam decision called Smith that came down I believe in 2008, where the panel in an unpublished decision adopted the Felici logic in the context of a motion for return of property under Rule 41G. But because that's still an open question in this Court, procedurally it would not have been ripe for us to raise the Felici issue, and Judge Robinson did not rule on it until there was some order that some or all of the weapons were improperly forfeited.  Correct, Your Honor. Even the antiques and what have you? Correct. By law. I believe there may be an exception for the ammunition. I believe that that can be put into police service, but the weapons themselves have to be destroyed if the government does prevail on the forfeiture. But for those reasons, we elected not to challenge Article III standing before the District Court since we did proceed criminally in the case. What about Ms. Williams' argument that the guns were not involved in the knowing violation? Respectfully to Ms. Williams, I believe that the plain language of the statute should be read and has been read in other contexts and other statutes, that the term involved in is not limited to the actual items involved in the effect or the actual corpus of the offense. It's a broader term, and that it would be defying common sense for the Court to hold that the very guns that the defendant possessed illegally, this is a possession crime, the crime requires no more than possession, that the very guns that the defendant possessed illegally were not involved in the offense. I think if that were the rule, then the Court would have to hold that somehow the guns for which, if they weren't there, there would be no offense, were not involved in the offense.  This is the very corpus of the offense. You're saying involved in is something that extends beyond the corpus of offense, but you're not saying that that's this case. You're saying this is the corpus of the offense because the possession is the crime. Indeed, and specifically, Your Honor, we charged in the indictment every last gun that we forfeited. They are listed by name in the indictment. The Supreme Court held... And it didn't matter whether they were the antiques or the ones on the store shelf or the one that he had in his locker. It didn't matter. Every single one of them had the same status by virtue of the fact that he was a drug user. Drug user and addict. Yes, Your Honor. Proximity has no relevance. Proximity has no relevance under the statute, Your Honor. If he pled guilty because he was an addict to possession and the guns... He pled guilty in New Jersey and the guns were in a warehouse in Arizona locked up. If he admitted in his plea agreement, as he did in this case, that those weapons in Arizona, that he pled guilty to those specific weapons, they would be involved in the offense. Now, take the... Those weapons would be forfeited, whether it's one or 600. Correct, Your Honor. Under the statute, that's correct. The Supreme Court in... It doesn't seem very fair, but I guess... Well, doesn't that segue into the excessive fines argument? That's just what I... I mean, why... Speaking only for myself, I wasn't persuaded by the notion that, well, we could have charged him with a lot more and we didn't. I mean, we don't punish people for things they could have, but weren't charged with, do we? Your Honor, that point, which the district court seized on in its opinion, but that point was offered principally to illustrate only one prong of the Badgikagian analysis in this case. The Supreme Court in Badgikagian, which is the 1998 case, set forth essentially four factors that the court should consider in evaluating whether the forfeiture was grossly disproportionate. It's important to recall that the standard is not proportionate or reasonable. It's whether or not it was grossly disproportionate. The Supreme Court set forth four factors that the court should look at. One of those factors, and only one of the four, is the relationship between the forfeiture and the sentence and fine that could have been imposed. In this case, because we elected to charge all the guns under one count, the statutory maximum fine was $250,000. The forfeiture in this case exceeded that amount. We raised the point with the district court about, well, he could have been charged with multiple guns, solely to illustrate the point that 250, the fact that the forfeiture here exceeded $250,000 should not be dispositive in the court's analysis. The Wilton Manors case, which is the 11th Circuit case, which is the leading case on evaluating that prong, has looked at the statutory max as a presumption, that if the forfeiture is within the statutory maximum, it's presumably constitutional, but specifically held that if the forfeiture exceeds the statutory maximum, it's not presumably unconstitutional. And in addressing that point, we raised the question about how this could have been charged. I would suggest to the court, though, that when the court considers all of the factors in the Bagicagian test, I think they all militate in favor of the forfeiture being constitutional in this case. Do you think the court's analysis was correct, that the government could actually have charged each weapon in a separate count or a separate complaint? And that justified the seizure? They argued that. We did, Your Honor.  It was our argument, Your Honor, and we certainly under this court's merger doctrine in 922G cases, which I know Judge Slobiter has written on, all of those weapons could have been charged. Every single one of them could have been charged as a separate 922G offense. A question would have arisen at sentencing whether convictions on all of those counts would have had to merge for purposes of sentencing. This court has held that weapons that are possessed at the same time and in the same place, those convictions must be merged at sentencing to comport with double jeopardy in a 922 case. However, we didn't have to reach this point, but our argument would be that the facts would have established that the defendant possessed at least two of these weapons on different times at different places by virtue of both the personal collection and the gunshot. I'm sorry, Judge Slobiter. That's all right. You just said something which leads me to my next question. Did you finish your sentence? Yes, Your Honor. Thank you. Okay. You read Section 924D1 as if it read any firearm or ammunition possessed by anyone who had a knowing violation of 922G, but Congress didn't say that. Congress said involved in or use, and you read possessed to mean involved in? I mean, because you just said possessed, and that's the way you answered our respective questions, but it doesn't say possessed. It doesn't involve more than just possession? It does, Your Honor. And so what does involved mean more than just possession? Well, may I clarify, Your Honor, when I agreed with the court when it said it entails more than just possession? Do you agree with that? I agree to this extent. May I clarify my language? Because I think more may be a somewhat difficult word to unpack. Something other than, let's say, just possession. It depends on the statute. Well, I'm talking about this statute in this case, 924D1. And what D1 applies to violations of numerous subparts of 922G, some of which are possessory offenses, some of which are not. So it says any firearm involved in or used in a knowing violation. Well, we don't use because there was no use. We're not worrying about use. Okay. Subsection F, which is an illegal interstate transportation case, where possession is not the gravamen of the offense, there to show involved in, the government would have to show that the guns were, in fact, illegally transported interstate. In this instance, though, with a 922G offense, the gravamen of the offense is possession. And if the gravamen of the offense is possession, I submit to the court that possession equals involved in in this case. How can we look at 924D1 and know what involved in means then or encompasses? I think the court can know, and the court can know certainly that the firearms that are the gravamen of the offense are certainly involved in the offense. There could be more. And, in fact, the circuits have held, and this circuit has held, in other contexts that Congress's use of the word involved in, in other statutes, other forfeiture statutes, means more than the corpus of the offense, the gravamen of the offense, not less, as my colleague suggests. So, for example, in the money laundering cases, the structuring cases, which are cited in our brief, the courts have routinely said that the money involved in a money laundering offense is the money that was, in fact, laundered, which is a sensible result. What we're suggesting here is that clearly Congress believed that the guns involved in a 922G3 offense are the guns that were possessed illegally by the defendant. You're saying you can't have possession without it being involved in. Correct, Your Honor. You can't have a crime without possession. Possession is a larger, we're doing a Venn diagram. Yes, Your Honor. It's larger than involved in. That's right. By the nature of what this crime to which Mr. Cheesman pleaded guilty is, there are many other crimes where the Venn diagram might be the inverse, or you've, I think, admitted it is the inverse. It could be. For example, I could argue to the court that if we had an illegal transportation case where a defendant pled guilty to illegally transporting a gun from a warehouse in Delaware to a home in Pennsylvania, and he transported one gun and he pled guilty to illegally transporting one gun, but the government was able to show at the forfeiture phase of the proceedings that in that warehouse there were two other guns, and that the government had evidence that he had. Stay on the bus. I'm sorry. I was moving with my example. Okay. That he intended, I apologize, that he intended to transport, was planning to transport the other two guns, but the police got there before he could. I believe that under the involved in language, the government could argue that all three guns could be forfeited because of the nature of those two guns being involved in the offense, even though only one gun was actually transported and therefore only one gun was the corpus or the gravamen of the offense. In the possession crime case, it's actually much easier because the only crime is what you possess, simply put. Yeah, I understand that. With the minute I have left, just to clarify a question that Judge Hardiman that you asked my opposing counsel about the procedure for third-party claims in this case, there is a procedure in criminal forfeitures. When there is a criminal forfeiture, in the sentencing phase of the case, the district court is required to resolve the forfeiture as to the defendant alone, and if the district court orders property forfeited, it enters a preliminary order of forfeiture as part of the sentence. That's what was done here in this case. After that point, the government as part of the preliminary order of forfeiture is ordered by the court to give notice to all potential third-party claimants who then can interpose claims in an ancillary proceeding. That's right, and the sisters didn't do that here. They did not, Your Honor, nor do I think they could. Why not? Because under the innocent owner concept that Judge Hardiman raised, that only applies if you acquire your interest prior to the forfeiture having occurred or without knowledge. In this case, there was absolutely no doubt, in fact it was part of the sentencing phase, that the sisters acquired their interest, whatever it is, after the seizure had occurred and with full knowledge of it. Under forfeiture law, they have no standing. I thank the court. Thank you. Ms. Williams? Yes, Your Honor. His answer, I think, as I understand what Mr. Rosen told us, was you look to the underlying offense to see what is the gravamen. And 922G3, to which Mr. Cheeseman pled guilty, is a possessory crime because it says it's unlawful, et cetera, to possess. And therefore, I gather, he says, the possession in itself is the involvement. I think that is what he told us. Therefore, how do you answer that? Well, in two ways, Your Honor. Number one, Mr. Cheeseman's possession of these firearms is in the most hyper-technical sense. He possessed the firearms because he was the sole owner of X-Ring Supply at the time in his name. Well, that's more than just technical. That's actual. I mean, he owned the guns. And we're certainly not disputing that he possessed the guns. And that was the offense to which he pled guilty. And therefore, ergo, they were involved, and therefore they could be forfeited. As I understand, and it seems perfectly logical from the language, from the plain language that Judge Fuentes mentioned, what's wrong with that plain language analysis? Well, first of all, he would need to use those guns in some manner in order to facilitate. What if he had the gun on him in his pockets? That could be forfeited, I assume. Well, of course, because if that were the case and he did that. That's possession. But if the gun is in his house and he's sitting out in the front yard, wouldn't that gun in the house be forfeitable by the government? Arguably, except for the fact that in this particular instance, the guns were owned, of course, by Mr. Cheesman, but X-Ring Supply is a federal firearms license holder selling the firearms legitimately. But for that fact. The term involved, you say if he has it on him in his physical possession, it can be forfeited. But if the gun happens to be removed in a house or in a garage or in a warehouse, it can't be forfeited because it's not involved. Is that your argument? Yes, Your Honor. There has to be some connection between the firearms and the facilitation of his drug use. But for the fact that Mr. Cheesman used drugs, these firearms are legitimately held by X-Ring Supply. So that's the corpus here is the fact that he was a drug addict. So according to you, they have to be involved in his addiction or his substance abuse. Correct, Your Honor. But it doesn't say that, does it? No, but it does say involved in or used. And if Congress intended for it to just be something named in, they would have said named in, but instead they used the words involved in. Yeah, but as he says, 924-D1 encompasses a whole series of crimes and not just the possessory ones. And he gave us examples. Correct. And for those crimes such as this that are mere possession, in order to forfeit 609 firearms, the government needs to prove something more. They need to prove that those firearms were used or involved in. Do you have any case that says that? With respect to involved in, no, Your Honor, except for the money laundering cases, which I believe in our briefs we've very much distinguished from this case. Okay. Thank you. Thank you. So it's really a case of first impression. Yes, Your Honor. Thank you both.